YOUNG, C.J.
(concurring in part and dissenting in part). I respectfully dissent from the majority’s conclusion that the errors committed in the trial court warrant a new trial. I concur with the majority’s conclusions that the testimony of Officer Tyler Sutherland, an expert on gangs and gang culture, was generally admissible, but that his specific statement opining on the *637 issue of defendant’s premeditation was inadmissible. Additionally, I agree that the prejudice resulting from the impermissible statement regarding defendant’s state of mind warrants relief with respect to defendant’s first-degree premeditated murder conviction.
However, I dissent from the majority’s holding that the prejudice resulting from that improper testimony was inseparable from defendant’s unpersuasive claim of self-defense.[1] The facts in the record belie defendant’s contention that he had a reasonable belief that deadly force was necessary to repel the aggressor’s attack. When accounting for the relevant facts, it becomes apparent that, notwithstanding Sutherland’s inadmissible premeditation testimony, defendant’s self-defense claim would have failed because any belief that deadly force was necessary was manifestly unreasonable.
As a result, I dissent from the majority’s conclusion that defendant is entitled to a new trial, and I would instead enter a conviction on the lesser-included offense of second-degree murder.
I. PLAIN ERROR STANDARD
The majority correctly concludes that the evidentiary error of the improperly admitted testimony is unpreserved. Because defendant’s counsel failed to raise the proper objections, it is defendant’s burden on appeal to show plain error affecting substantial rights.[2] Defendant must show that (1) an error occurred, (2) the error *638 was clear or obvious, and (3) the error prejudiced him — meaning that it affected the outcome of the lower court’s proceedings.[3] If defendant meets this burden, it is within the appellate court’s discretion to reverse, which is warranted only when the error resulted in the conviction of an actually innocent defendant or when an error seriously affected the “fairness, integrity or public reputation of judicial proceedings . . . .”[4] In other words, in order get a new trial, defendant must show that the error was decisive with regard to his self-defense claim. Otherwise, the proofs at trial sustain a charge of second-degree murder.
II. DEFENDANT’S SELF-DEFENSE CLAIM
Because defendant timely raised the issue of self-defense, the prosecution bore the burden at trial of disproving that the killing was done in self-defense.[5] By enacting MCL 780.972, the Legislature codified the common-law requirement that for a killing to be justified by self-defense, a defendant must have both a subjectively honest belief and an objectively reasonable belief that the use of deadly force is necessary to prevent imminent death or great bodily harm.[6] In other words, a defendant must avoid the use of deadly force if he can safely and reasonably do so, for example by applying nonlethal force.[7] Furthermore, when outside of one’s *639 dwelling, a defendant’s failure to withdraw from the altercation may be considered in deciding whether the defendant honestly and reasonably believed there was a need to employ deadly force.[8]
Sutherland’s impermissible testimony, which exclusively concerned defendant’s subjective motive for the use of deadly force, could not affect the inquiry whether defendant’s belief in the necessity of using deadly force was objectively reasonable.[9] That the victim swung first does not support defendant’s alleged reasonable belief that the situation required the use of deadly force.[10] Defendant and his companions outnumbered the victims nearly three-to-one and possessed numerous weapons, while the victim and his companions had none. Moreover, there was no evidence adduced at trial that the victim or his companions gave any indication that they had weapons.* [11] Given these facts, defendant undeniably had the ability to withdraw from the altercation or to use non-deadly force to parry the victim’s threat.[12] He did neither.[13] *640 Instead, surrounded by fellow gang members, some of whom were armed, he stood pat, pointed the gun at the victim’s chest, and fired. Whatever defendant’s subjective belief was, these facts are fatal to defendant’s assertion that it was objectively reasonable to believe that lethal force was necessary.[14] But more to the point, this very issue is one submitted to the jury. In my judgment, the majority improperly concludes that the prejudicial effect of Sutherland’s improper testimony extended to defendant’s self-defense claim.
For these reasons, I conclude that the error in admitting Sutherland’s impermissible statement was not prejudicial to defendant’s self-defense claim such that a different outcome would have been even remotely likely if not for the evidentiary error.
III. CONCLUSION
Because any prejudice to defendant’s claim of self-defense was not outcome-determinative, I respectfully dissent from the majority’s holding that defendant is entitled to a new trial. Although one part of Sutherland’s testimony improperly touched on premeditation, the jury’s findings on all the elements of the necessarily lesser-included offense of second-degree murder remain unaffected.[15] Because there exists no outcome- *641 determinative error regarding defendant’s claim of self-defense, the jury’s remaining factual determinations are sufficient to sustain a conviction of second-degree murder. Therefore, I would remand this matter for the entry of such a conviction.

 I note that both the Court of Appeals majority and this Court’s majority have recognized the weakness of defendant’s claim of self-defense. See People v Bynum., unpublished opinion per curiam of the Court of Appeals, issued April 18, 2013 (Docket No. 307028), p 9 (stating that defendant’s “self-defense theory was not particularly persuasive”); ante at 632-633.

 People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999).

 Id.

 Id. (quotation marks and citation omitted).

 People v Dupree, 486 Mich 693, 709-710; 788 NW2d 399 (2010). The prosecution must disprove defendant’s self-defense claim beyond a reasonable doubt. People v Bell, 155 Mich App 408, 414; 399 NW2d 542 (1986).

 See People v Riddle, 467 Mich 116, 126-127; 649 NW2d 30 (2002).

 Id. at 129 (“If it is possible to safely avoid an attack then it is not necessary, and therefore not permissible, to exercise deadly force against the attacker.”).

 See People v Richardson, 490 Mich 115; 803 NW2d 302 (2011); Riddle, 467 Mich at 127.

 By purporting to be unable to easily “separate the prejudice regarding premeditation from the prejudice regarding self-defense,” the majority fails to fully account for the distinction between defendant’s subjective belief in the need to employ deadly force and the objective reasonableness of that belief. The majority does not even directly assess this use of deadly force question.

 See Riddle, 467 Mich at 129.

 One could reasonably infer that the victim’s choice to throw a punch at defendant (who was surrounded by a substantial group of men), rather than, say, pull a gun or draw a knife, was evidence that he wasn’t armed. Indeed, defendant’s contention that his belief that lethal force was necessary is compromised by the lack of any record evidence that would have led defendant to reasonably believe the victims were armed.

 See id.

 By concluding that the speed “with which the verbal altercation escalated into a physical altercation belies the .. . claim that Bynum could have retreated easily,” the majority not only fails to account for the *640 potential use of nondeadly force but ignores that defendant’s group vastly outnumbered the victim and his companions.

 The prosecutor clearly made this point in his closing argument stating: “[I]f you can in a safe fashion back out of a situation, you are required to do so before you use deadly force,” and that “there is no question that Levon Bynum had the opportunity and had the means of exiting that situation without ever having drawn the gun that he was carrying, pointing the gun he was carrying, or firing the gun that he was carrying.”

 See MCL 750.316; MCL 750.317; People v Carter, 395 Mich 434, 437; 236 NW2d 500 (1975).